**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**PNGI CHARLES TOWN GAMING, LLC,**
**and HOLLYWOOD CASINOS, LLC,**

       Plaintiffs,

**v.**                                 **CIVIL ACTION NO.: 3:18-CV-38**
                                             **(GROH)**

**HOT SPOT CT REAL ESTATE, LLC,**
**doing business as CASINO PAWN,**
**BRENT JACKSON, CASINO PAWN, LLC,**
**LYNN PERKINS, and CHRISTOPHER PERKINS,**

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS HOT SPOT CT**</u>
<u>**REAL ESTATE LLC'S AND BRENT JACKSON'S MOTION FOR PARTIAL**</u>
<u>**SUMMARY JUDGMENT**</u>

Now before the Court is Defendants Hot Spot CT Real Estate, LLC's and Brent

Jackson's Motion for Partial Summary Judgment [ECF No. 176], filed on August 5,

2019.  Plaintiffs filed a response in opposition on August 26, 2019.  ECF No. 182.

Accordingly, this matter has been fully briefed and is now ripe for review.  For the

following reasons, Defendants' Motion for Partial Summary Judgment is denied.

## I.      Factual and Procedural Background

This action arises from Defendants' ownership of two pawn shops: (1) the

Berkeley Plaza Pawn Shop, located in Martinsburg, WV and (2) the Charles Town Pawn

Shop, located across the street from Plaintiff's Hollywood Casino in Charles Town, WV.

On July 12, 2007, Defendant Brent Jackson ("Defendant Jackson"), through his

company Hot Spot Real Estate LLC ("Defendant Hot Spot"), purchased property across the street from Plaintiffs' Hollywood Casino.  See ECF No. 177-1 & ECF No. 177-3. Ten years later, in September 2017, Defendant Jackson opened a pawn shop ("Charles Town Pawn Shop") at this property, displaying a sign reading "Hollywood Pawn."  See ECF No. 182-13 at 2; see also ECF No. 182-12 at 4.  Two months later, Defendant Jackson removed the "Hollywood Pawn" sign from Charles Town Pawn Shop after receiving a letter from Plaintiffs' counsel alleging that his proposed use of the Hollywood mark "constitute[d] intentional and willful trademark infringement."  See ECF No. 182-12 at 4; see also ECF No. 177-5 at 1.  During the two months that the "Hollywood Pawn" sign was erected at Charles Town Pawn Shop, a shuttle van for Lust Gentleman's Club in nearby Martinsburg, WV was parked in the pawn shop's parking lot.  See ECF No. 182-17.  Defendants Brent Jackson helped manage the club while his wife, Defendant Lynn Perkins, was the owner.  See ECF No. 182-6 at 22; see also ECF No. 182-26.

On December 8, 2017, Defendant Jackson replaced the "Hollywood Pawn" sign at Charles Town Pawn Shop with a sign reading "Casino Pawn."  See ECF No. 182-15 at 2; see also ECF No. 182-6 at 11.  The "Casino Pawn" sign remained displayed at this location until December 8, 2018.  See ECF No. 182-12 at 4.  Since its establishment, Charles Town Pawn Shop has remained vacant and has never been open to the public. See ECF No. 182-6 at 4.

In December 2018, Defendants Lynn Perkins, Christopher Perkins, and Casino Pawn, LLC opened a second pawn shop in Martinsburg, WV ("Berkeley Plaza Pawn Shop").  See ECF No. 182-5 at 10; see also ECF No. 182-10 at 8.  The Berkeley Plaza Pawn Shop uses the same "Casino Pawn" logo as the Charles Town Pawn Shop.  See

ECF No. 178-17 at 2; ECF No. 178-10 at 9; ECF No. 178-5 at 9.  To date, the Berkeley

Plaza Pawn Shop does not have regular business hours and is only open a few days

per week.  See ECF No. 178-10 at 12.  Additionally, this location has no active website,

no signage readily visible from the street, and has only made one sale worth twenty-five

dollars.  See Id; see also ECF No. 178-5 at 12–13.

In terms of marketing efforts, Defendants purchased two roadside billboards.

ECF No. 182-6 at 14–15.  On their face, both billboards refer exclusively to the Charles

Town location, stating that Casino Pawn is located "across from the casino," in capital

letters.  ECF No. 182-18; ECF No. 182-19.  Both billboards also featured the slogan,

"We Pay the Most!"  Id.  The billboard near the Charles Town Pawn Shop remains

displayed, whereas the other billboard near the Berkeley Plaza Pawn Shop was

removed in early 2019.  ECF No. 177-18 at 3–4.

Plaintiffs filed their initial complaint [ECF No. 1] on March 19, 2018 and later filed

an amended complaint [ECF No. 132] on March 18, 2019.  In their amended complaint,

Plaintiffs assert three claims for relief against Defendants concerning the Charles Town

location.[1]  Plaintiffs claim that the Defendants' use of the "Casino Pawn" mark at

Charles Town Pawn Shop creates a false association with Plaintiffs' Hollywood Casino

gaming facility in violation of 15 U.S.C. § 1125(a) and common law unfair competition

under West Virginia law.  See ECF No. 132 at 15–16, & 19.  Plaintiffs also assert a

federal trademark infringement claim under 15 U.S.C § 1114(a) regarding Defendants'

use of the "Hollywood Pawn" mark at Charles Town Pawn Shop.  ECF No. 132 at 17–

---

[1]Plaintiffs assert two claims for relief (false association, 15 U.S.C. § 1125(a), and common law unfair competition) against Defendants concerning the Berkeley Plaza Pawn Shop.  Defendants' Motion for Summary Judgment or Partial Summary Judgment [ECF No. 170] on these two claims is addressed in a separate order.

18.  Defendants move for summary judgment on all three counts.

## II.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.  That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).  A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that

"[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III.     Applicable Legal Standard

Under 15 U.S.C. § 1125(a), any person who uses a word or mark "in commerce" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person" shall be liable in a civil action to "any person who believes that he or she is likely to be damaged by such an act."  15 U.S.C. § 1125(a).  The statute "goes beyond trademark protection" and creates a cause of action for unfair competition through misleading advertising or labeling. POM Wonderful LLC v. Coca-Cola Co., 134 S. Ct. 2228, 2234 (2014).  To that end, the plain language of the statute does not require that the plaintiff "possess or have used a trademark in U.S. commerce as an element of the cause of action."  Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th Cir. 2016).  However, the plaintiff "must allege an injury to a commercial interest in reputation or sales," and must show that the "economic or reputational injury flow[s] directly from the deception."  Id. at 707– 08.

The test for false association under 15 U.S.C. § 1125(a) closely parallels the test for trademark infringement under 15 U.S.C. 1114(1), focusing on whether there is a confusing similarity between two marks.  Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987).  The test for common law unfair competition under West Virginia law resembles tests evaluating federal trademark infringement and unfair competition claims by also focusing on confusion and injury.  Choice Hotels Int'l, Inc. v. Fisher, 2014 WL 795046, at *5 (N.D.W. Va. Feb. 27, 2014).  Therefore, it is appropriate

for the Court to evaluate Plaintiffs' false association (Count I) and unfair competition (Count III) claims using the same legal standard.

To state a federal false association claim or a common law unfair competition claim, a plaintiff must sufficiently allege that: (1) a defendant uses a designation; (2) in interstate commerce; (3) in connection with goods and services; (4) which designation is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of defendant's goods or services; and, (5) plaintiff has been or is likely to be damaged by these acts. <u>Superior Performers, Inc. v. Family First Life, LLC</u>, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014). In a previous order, pertaining to the Martinsburg location [ECF No. 217], the Court reduced this test to the following three factors based on the applicable statute: (1) use of the mark in interstate commerce; (2) that is likely to cause confusion as to the Defendants' affiliation with the Plaintiffs; and, (3) the Plaintiffs' business and reputation has been harmed by the false association. <u>See</u> ECF No. 39 at 5–6 (deriving from 15 U.S.C. § 1125(a)).

### IV.    Discussion

#### A.  Counts I (False Association) and III (Common Law Unfair Competition)

Parties do not dispute Defendants' use of the "Casino Pawn" mark in interstate commerce at Charles Town Pawn Shop. Therefore, the Court's consideration of Defendants' motion for summary judgment on both counts involving the Charles Town Pawn Shop will be restricted to the second (likelihood of confusion) and third (business and reputational harm) prongs of this test.

##### a.  Second Factor – Likelihood of Confusion

To determine whether a likelihood of confusion exists between two marks, the

Court examines nine factors:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (6) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 314 (4th Cir. 2017) (quoting George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009)).  "Not all of these factors will be relevant in every…dispute, and there is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue." Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 (4th Cir. 2006).  Likelihood of confusion is "frequently a fairly disputed issue of fact on which reasonable minds may differ" and "a matter of varying human reactions to situations incapable of exact appraisement." Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992) (internal quotation marks omitted).  Therefore, these factors "are not meant to be a rigid formula for infringement," but "only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion."  Id. at 320 (internal quotation marks omitted).  While the Fourth Circuit recognizes that summary judgment on the likelihood of confusion issue is permissible in appropriate cases, it also views the likelihood of confusion as "an inherently factual issue that depends on the facts and circumstances of each case."  Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 153 (4th Cir. 2012) (quoting Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 933 (4th Cir. 1995) (internal quotation marks omitted)).

Parties have elected to not discuss the eighth and ninth factors of the likelihood of confusion analysis in their respective briefings. Therefore, the Court will only consider the first seven factors in assessing the likelihood of confusion between the Defendants' use of the "Casino Pawn" mark at Charles Town Pawn Shop and the Plaintiffs' Hollywood Casino® mark.

### i. Strength and Distinctiveness of Plaintiffs' Mark

The Fourth Circuit has set forth a two-factor test for evaluating the strength and distinctiveness of two marks: (1) the conceptual strength of the mark and (2) the commercial strength of the mark. CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263, 269 (4th Cir. 2006). Courts determine a mark's conceptual strength by determining its placement into one of the following categories of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). On the higher end of the spectrum, suggestive and arbitrary marks are deemed strong and presumptively valid; on the other hand, generic and descriptive marks are considered weak and require secondary meaning to receive protection in the marketplace. Id. The second factor, commercial strength, examines whether "a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." CareFirst of Md., Inc., 434 F.3d at 269. Courts consider six factors when accessing commercial strength: (a) the plaintiff's advertising expenditures; (b) consumer studies linking the mark to a source; (c) the plaintiff's record of sales success; (d) unsolicited media coverage of the plaintiff's business; (e) attempts to plagiarize the mark; and (f) length and exclusivity of the

plaintiff's use of the mark. <u>JFJ Toys, Inc. v. Sears Holdings Corp.</u>, 237 F. Supp. 3d 311, 335 (D. Md. 2017). Overall, the stronger and more distinctive the mark, the greater the likelihood that consumers will be confused by competing uses of the mark. <u>Id</u>. at 334.

Plaintiffs claim that the strength and distinctiveness of a mark is only relevant in trademark infringement analysis and therefore decline to address this factor in their briefing. However, the Fourth Circuit has applied the same elements when analyzing trademark infringement and false association causes of action, including the first seven likelihood-of-confusion factors. <u>See</u> <u>Lamparello v. Falwell</u>, 420 F.3d 309, 313–15 (4th Cir. 2005). Thus, the Court finds this factor relevant in its analysis.

Defendants argue that Plaintiffs' Hollywood Casino® mark is descriptive and the word "casino," which both marks share, is generic. In support, Defendants note that Plaintiffs do not own exclusive rights to the use of "casino" in their trademark registration. Descriptive marks fall in the middle of the distinctiveness spectrum, and therefore are only entitled to protection if they have acquired a secondary meaning. <u>JFJ Toys, Inc.</u>, 237 F.Supp.3d at 328. "Secondary meaning exists when, in the minds of the public, the primary significance of the term identifies the source of the product rather than the product itself." <u>Id</u>. Here, Plaintiffs' registration of its mark with the United States Patent and Trademark Office serves as prima facie evidence that "Hollywood Casino" falls on the lower end of the distinctiveness spectrum. According to Plaintiffs' trademark registration, Plaintiffs do not have an exclusive right to use of "casino" apart from its mark. <u>See</u> ECF No. 182-2. Furthermore, "casino" is a generic term that employs the common name of a gambling facility. It resembles other generic marks identified by the Fourth Circuit. <u>See</u> <u>George & Co. LLC v. Imagination Entm't Ltd.</u>, 575

F.3d 383, 393–94 (4th Cir. 2009) (listing examples of generic marks including bleach, copies, cigarettes, and cars).

Although Plaintiffs' Hollywood Casino® mark lacks conceptual strength based on its trademark registration, other evidence demonstrates that the mark has commercial strength. Plaintiffs provide hundreds of pages worth of unsolicited media coverage. See ECF No. 182-8. Additionally, Plaintiffs spent nearly $10 million on marketing in 2018. See ECF No. 181-3. Because Plaintiffs have offered sufficient evidence to demonstrate commercial strength, there is a genuine issue of material fact regarding the strength and distinctiveness of Plaintiffs' mark. Therefore, this factor does not weigh in favor of summary judgment.

### ii. Similarity of the Two Marks

The second factor involves examining the sight, sound, and meaning of the two marks at issue. George & Co. LLC, 575 F. 3d at 396. "[T]he marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." Lone Star, 43 F.3d at 936. Courts are particularly inclined to find similarity between two marks when there is overlap in the marks' dominant portions, even if the marks contain other dissimilar words. Select Auto Imports Inc. v. Yates Select Auto Sales, LLC, 195 F. Supp. 3d 818, 835 (E.D. Va. 2016) (listing several cases where courts found two marks sufficiently similar because they shared dominant words). "Where the proposed mark consists of but two words, one of which is disclaimed, the word not disclaimed is generally regarded as the dominant or critical term." Pizzeria Uno Corp., 747 F.2d at 1529–30.

Again, Plaintiffs elected to not address this factor, arguing that it is only relevant in trademark infringement claims. Because the test for a false designation of origin claim is "essentially the same as the test for trademark infringement," courts have evaluated both claims using the same factors under the likelihood of confusion test. JCF Toys, Inc., 237 F.Supp.3d at 327. Therefore, despite the Plaintiffs failure to address the similarity between Hollywood Casino® and "Casino Pawn," the Court will consider this factor.

Defendants argue that the two marks are not similar because the style of text and color scheme used in each mark are noticeably different. Defendants also argue that the dominant parts of each are different. Construing the facts in the light most favorable to the Plaintiffs, the two marks are indeed dissimilar. Although both marks share a common word, according to the Plaintiffs' trademark registration for its mark, Hollywood Casino® does not possess an exclusive right to "casino." See ECF No. 182-2. Because "casino" is disclaimed, the dominant parts of each mark, "Hollywood" and "Pawn," must be compared for similarity. It is unquestionable that these words are different with respect to sight, sound, and meaning. The same is true when examining both marks in their entirety. Visually, the two marks are noticeably different in text style and color scheme. Plaintiffs' Hollywood Casino® mark incorporates two styles of font. The word "Hollywood" appears to be in Microsoft Word's Broadway font with white lines running through each letter, whereas "casino" is depicted in a black, cursive script. Id. Defendants' "Casino Pawn" mark also uses separate font styles for each word; however, these font styles do not resemble the Plaintiffs' mark in any way. ECF No. 177-14. Furthermore, each letter in "casino," from top to bottom, fades from red to

orange.  Id.  Finally, the two marks evoke different meanings.  Plaintiffs' Hollywood

Casino® mark indicates an entertainment and gaming facility, whereas Defendants'

"Casino Pawn" mark indicates a pawn shop.  Because the two marks are dissimilar in

sight, sound, and definition, this factor supports summary judgment.

### iii.  Similarity of Goods and Services

When determining the similarity of goods and services, the Fourth Circuit

considers whether the public is likely to attribute the products and services to a single

source.  Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239,

244 (4th Cir. 2007) (quoting CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 679 (7th

Cir. 2001)).  The products and services in question need not be identical or in direct

competition with each other, but only need to be merely related.  Id.

Although Plaintiffs admit that Hollywood Casino at Charles Town has no present

plan to engage in pawning [ECF No. 177-10 at 2; ECF No. 177-12 at 15, 17–18], they

do provide evidence to show that the two businesses offer related services.  It is evident

that pawn shops have emerged as fixtures of the gambling industry, providing people

with access to quick cash to use at casinos.  In their respective depositions, Defendants

Lynn and Christopher Perkins both acknowledge this close affiliation, agreeing that

people pawn items to secure money quickly.  See ECF No. 182-5 at 7; see also ECF

No. 182-10 at 7.  Based on this evidence and the association and relation of pawn

shops to the gambling industry, a trier of fact could reasonably find that there is a

likelihood of confusion based on relatedness of services.  Therefore, this factor weighs

against summary judgment.

**iv. Similarity of Facilities**

In regard to the similarity of facilities, the Court focuses on whether the goods and services offered by the two businesses at issue serve the same purpose and if these purposes are related. Select Auto Imports Inc., 195 F. Supp. 3d at 837. When assessing this factor, the geographic proximity of the businesses may weigh toward a finding that facilities are similar. Variety Stores, 150 F.Supp.3d at 590. Furthermore, courts will determine if goods and services are sold in the same channels of trade, meaning that the goods and services in question are marketed to the same class of consumers in the same context. JFJ Toys, Inc., 237 F.Supp.3d at 338.

Defendants aver that the parties' facilities are not similar because, unlike Plaintiffs' extravagant, multimillion-dollar casino, Charles Town Pawn Shop is a small, family-run pawn business that has never offered any goods or services since its existence. In response, Plaintiffs argue that both businesses are retail establishments that rely on walk-in traffic and operate in the same geographical area. In support, Plaintiffs only cite to Defendant Jackson's acknowledgement that pawn shops rely on walk-in traffic for business. See ECF No. 182-6 at 7.

While Plaintiffs' casino offers a wide variety of services including gambling, lodging, horse racing, and dining, and Defendants' Charles Town Pawn Shop does not currently offer any goods or services because it is not in operation, both parties operate in overlapping markets and cater to the same consumer base. Defendants' Charles Pawn Shop is located directly across the street from Plaintiffs' casino. Additionally, as previously noted, it is not uncommon for casino patrons to visit pawn shops, especially those conveniently located, to access gambling money. The fact that parties provide

different types of services through different modes of distribution is not decisive because there is evidence showing that these businesses are plausibly related through sponsorship or affiliation.  See Hershey Co. v. Friends of Steve Hershey, 33 F.Supp.3d 588, 594 (D. Md. 2014) (finding that there is a likelihood of confusion between Plaintiffs' candy bar and Defendants' political campaign with respect to sponsorship or affiliation, even though there was no similarity in facilities).  Although other courts find that this factor has little impact on the likelihood-of-confusion analysis, a trier of fact could reasonably find a similarity in facilities based on geographic proximity and comparable consumer bases.  Therefore, this factor weighs against summary judgment.

### v.  Similarity of Advertising

When comparing advertising, the Fourth Circuit looks at a variety of factors including the media, geographic scope, appearance, and content of the parties' advertisements.  CareFirst of Md., Inc., 434 F.3d at 273.  "A finding of similarity of advertising requires 'some degree of overlap' among the parties' outlets and customer bases, but the two need not be identical."  Select Auto Imports Inc., 195 F.Supp.3d at 837.

Here, Defendants argue that the Charles Town Pawn Shop does not engage in any advertising aside from the one lighted sign previously displayed on its premises and two billboards, one of which is no longer standing.  Defendants further argue their advertising efforts are far less extensive than Plaintiffs' advertisements for its casino, which include paper mailings, social media, radio, billboards, television, multiple lighted signs, and an interactive website.  However, the mere fact that both parties use billboards to advertise their respective businesses is enough to create a genuine issue

of material fact.  See ECF Nos. 182-18, 182-19, & 182-21.  Furthermore, Defendants'

billboards featured the slogan, "We Pay the Most," which is commonly used in casino

advertisements.  See ECF No. 182-4 at 4.  Because the parties' advertisements are

similar in geographic scope, appearance, and content, this factor does not support

summary judgment for the Defendants.

### vi.  Defendants' Intent

Courts have repeatedly inferred bad faith in situations where defendants had

prior knowledge of plaintiff's marks and where there was circumstantial evidence of

intent.  See, e.g., Variety Stores, 150 F.Supp.3d at 590 ("It is difficult to imagine more

compelling evidence of intent to confuse than a knowing decision to use a similar mark

to sell similar goods."); Teaching Co. Ltd P'ship v. Unapix Entm't, Inc., 87 F.Supp.2d at

582–83 ("When a defendant adopts a mark with full knowledge of the plaintiff's mark,

intent is inferred."); see also EndoSurg Med., Inc. v. EndoMaster Med., Inc., 71

F.Supp.3d 525, 551 (D.Md.2014) (finding intent based in part on "[defendants'] use of

the word endo in their name, and their business location on the same block").  Select

Auto Imports Inc., 195 F. Supp. 3d at 838.

Defendants argue that there is no evidence of malintent because Defendant

Jackson, along with retained counsel, performed a trademark search prior to selecting

the "Casino Pawn" mark and submitting their application for approval.  Defendants also

aver that Plaintiffs' evidence that their selection of the "Casino Pawn" mark was done in

bad faith is merely speculative.

Despite the Defendants' efforts to select a mark that would not prompt confusion

in the marketplace, a trier of fact could reasonably find that under the facts presented,

Defendants possessed the intent to cause confusion within the public. Based on their testimony, Defendants were fully aware that Hollywood Casino at Charles Town is the only casino in the Eastern Panhandle of West Virginia, and because of this, majority of people in the community refer to it as "the casino." See ECF No. 182-6 at 11; see also id. at 15; ECF No. 182-5 at 4. With this knowledge, Defendants selected the "Casino Pawn" mark for its economic appeal. See ECF No. 182-10 at 6. In fact, Defendant Christopher Perkins admitted in his deposition that the "Casino Pawn" was an "appealing name for obvious reasons." Id. A trier of fact could reasonably construe this statement as evidence that Defendants strategically sought to profit from Plaintiffs' business. Furthermore, there is evidence that Defendant Jackson was previously involved in another trademark infringement case before this Court where he opened a bar and restaurant using a designation and mark that was allegedly closely related and confusingly similar to a local resort's mark. See ECF No. 182-23. Based on this evidence alone, a trier of fact could infer bad faith because it appears that Defendant Jackson engages in a pattern of practice of creating businesses that seek to affiliate with and profit from longstanding establishments in the area. Because Plaintiffs have met their evidentiary burden to create a genuine issue of material fact, this factor weighs against summary judgment.

### vii.  Actual Confusion

Evidence of actual confusion is often the most paramount and decisive factor in the likelihood-of-confusion analysis. CareFirst of Md., Inc., 434 F.3d at 268. Actual confusion can be demonstrated by anecdotal and survey evidence. George & Co., LLC, 575 F.3d at 398. The threshold for evidence of actual confusion is low and typically only

requires more than a "handful of people over several years." <u>Select Auto Imports Inc.</u>, 195 F.Supp.3d at 839 (quoting <u>Coryn Grp. II, v. O.C. Seacrets, Inc.</u>, 868 F.Supp.2d 468, 488 (D. Md. 2012)).  However, "[i]f there is a very large volume of contacts or transactions which could give rise to confusion and there is only a handful of instances of actual confusion, the evidence of actual confusion may receive relatively little weight." <u>George & Co., LLC</u>, 575 F.3d at 398.

Defendants argue that Plaintiffs do not offer any survey evidence of actual confusion, and the evidence that they do offer is at best de minimis.  However, Plaintiffs' evidence of actual confusion from several casino employees is enough to create a genuine issue of material fact.  Specifically, three casino employees testified to frequently fielding questions from customers concerning the Charles Town Pawn Shop's affiliation with the casino.  ECF No. 182-20 at 5–6; ECF No. 182-24 at 3; ECF No. 182-16 at 9.  Additionally, other employees personally expressed confusion about the relationship between the casino and the Charles Town Pawn Shop.  <u>See</u> ECF No. 182-25 at 2; <u>see also</u> ECF No. 177-22.  Although certain employees expressed their personal beliefs of confusion, a trier of fact could find it probable that consumers shared this same confusion.

Defendants mistakenly contest that the Plaintiffs' evidence of actual confusion is inadmissible hearsay.  The Fourth Circuit has previously found third-party statements admissible and probative when used to demonstrate instances of consumer confusion. <u>See</u> <u>Lyons P'ship, LP v. Morris Costumes, Inc.</u>, 243 F.3d 789, 804 (4th Cir. 2001) (finding that plaintiff's evidence of actual confusion, including children's statements and newspaper articles, were admissible because they were offered to prove that children

and newspaper reporters expressed their belief that other costumed dragons were Barney as opposed to proving "the truth of the matter asserted – i.e., that the persons wearing [dragon costumes] were in fact Barney").  Like in Lyons, Plaintiffs offer testimony from casino employees to prove that numerous consumers expressed confusion about the casino's affiliation with the Charles Town Pawn Shop, not to prove that there is in fact an association between the two businesses.  Furthermore, the casino employees do not attempt to paraphrase or summarize customer statements in their testimony; rather, they estimate the number of times customers asked them about the casino's affiliation with Charles Town Pawn Shop, which is legitimate and admissible evidence of actual confusion.  Defendants also rely on Star Industries, Inc., v. Bacardi & Co. Ltd., 412 F.3d 373, 388 (2d Cir. 2005), where the Second Circuit agreed with the district court in finding Plaintiff's evidence of actual confusion extremely weak.  However, unlike in Star Industries, Inc., Defendants here did not offer their own survey evidence to show that there was none or minimal consumer confusion between the Charles Town Pawn Shop and Hollywood Casino® facility.  Therefore, considering anticipated testimony from several casino employees, there is a genuine issue of material fact regarding actual consumer confusion.

### b.  Third Factor – Business and Reputational Harm

Pursuant to 15 U.S.C. § 1125(a), a plaintiff suing under false association must allege "proximate causation of a cognizable injury."  Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S.Ct. 1377,1389–91 (2014).  "To show proximate cause, the plaintiff must allege 'economic or reputational injury flowing directly from the deception wrought by the defendant's' false association."  Farm Fresh Direct Direct By a

Cut Above LLC v. Downey, 2017 WL 4865481, at *9 (D. Md. Oct. 26, 2017) (quoting Lexmark Intern., Inc.,134 S.Ct. at 1391). "Proximate cause generally is an issue of fact for the jury, to be decided as a matter of law only in 'rare or exceptional cases' where 'the evidence is susceptible to only one inference.'" Muhler Co. v. Ply Gem Holdings, Inc., 637 F. App'x 746, 748 (4th Cir. 2016).

Here, there is a genuine issue of material fact regarding whether Defendants' use the "Casino Pawn" mark at Charles Town Pawn Shop was the proximate cause of commercial and reputational harm. In particular, a front desk employee at the casino's hotel recalled customers expressing "general distaste" for a possible association between the casino and the pawn shop across the street. See ECF No. 178-20 at 6. Even after the "Casino Pawn" sign was removed, customers continued to express confusion regarding the casino's relationship with Charles Town Pawn Shop to the same front desk employee. Id. at 5. Furthermore, many consumers and casino employees noticed the Lust Gentleman's Club shuttle van parked at Charles Town Pawn Shop and expressed confusion as to whether the casino was affiliated with the pawn shop and the gentleman's club. See ECF No. 177-22. Because gentleman's clubs are generally considered inherently scandalous and are often publicly condemned, a trier of fact could reasonably find that Plaintiffs suffered reputational harm. Therefore, Defendants' argument that a disclaimer would remedy any alleged confusion or injury is unpersuasive and does not support summary judgment.

## B. Count II (Trademark Infringement)

Next, Defendants move for summary judgment with respect to Count II of the Plaintiffs' complaint. Defendants argue that their use of the "Hollywood Pawn" mark at

Charles Town Pawn Shop does not constitute trademark infringement because the "Hollywood Pawn" mark was never used in commerce, nor was it ever used in connection with the sale, distribution, or advertisement of goods or services as required under 15 U.S.C. § 1114(a). In support, Defendants highlight the following facts: (1) the "Hollywood Pawn" mark was displayed at Charles Town Pawn Shop for only two and one-half months; (2) Charles Town Pawn Shop was never in operation, nor was it ever opened to the public; and, (3) the "Hollywood Pawn" mark never appeared on any goods or marketing materials. Due to the Plaintiffs' inability to satisfy all elements of their trademark infringement claim, Defendants move for this claim to be dismissed entirely.

As previously mentioned, courts apply the same legal test when evaluating federal trademark infringement and unfair competition claims. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 930 (4th Cir. 1995). Under this legal standard, a plaintiff must prove (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and, (5) that the defendant used the mark in a manner likely to confuse consumers. Id.; see also 15 U.S.C. §§ 1114, 1125(a). On summary judgment, parties dispute whether Plaintiffs satisfy the third and fourth elements of their trademark infringement claim. Therefore, the Court will only consider these elements in its discussion.

The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not merely to reserve a right in a mark." 15 U.S.C. §

1127.  In the context of services, a mark is in "use in commerce" when the mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States…and the person rendering the services is engaged in commerce in connection with the services."  Id.  The Fourth Circuit interprets the plain language of this statute finding that "mere advertising" of a mark does not establish its use in commerce, nor its overall protectability as a trademark.  Int'l Bancorp, LLC v. Societe des Baines de Mer et du Cercle des Etrangers a Monaco, 329 F.3d 359, 364 (4th Cir. 2003).  With regards to the fourth element, defendant's use of the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services, the Fourth Circuit holds that an alleged infringer need only have prevented consumers from obtaining or using the plaintiff's services, or need only have connected its mark to another business's goods or services to satisfy this element.  See People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 365 (4th Cir. 2001).

Here, Plaintiffs present sufficient evidence to demonstrate that Defendants used the "Hollywood Pawn" mark "in commerce" and "in connection" with advertisement of services.  While the "Hollywood Pawn" sign was only erected for two and one-half months at Charles Town Pawn Shop, and the shop itself was never actually open for business, Plaintiffs demonstrate through record evidence that Defendants' use of the "Hollywood Pawn" mark during this short period of time did elicit confusion and caused consumers to condemn the casino's alleged affiliation with the pawn shop.  For example, in her deposition testimony, a guest services manager at the casino's hotel mentioned that several guests "thought it was in poor taste" for the casino to put a pawn

shop across the street and were relieved to know that there was no affiliation between the two businesses.  See ECF No. 182-16 at 7–8.  Moreover, these same guests were relieved that the casino was not "promoting [customers] to gamble more."  Id. at 8.  Similarly, another hotel employee testified that customers expressed "general distaste" for the casino's alleged affiliation with Charles Town Pawn Shop, and even referred to this potential business association as "tacky."  See ECF No. 182-20 at 5.  Altogether, this evidence presents a genuine issue of material fact as to whether Defendants' "Hollywood Pawn" mark was used in commerce, and as a result, dissuaded consumers from visiting the casino.  Furthermore, Defendants' argument that this case is point with Combe Inc. v. Dr. August Wolff GmbH & Co. KG Arzneimittel is unpersuasive because the facts here concern the use of a mark in connection with services, not goods.  The Lanham Act clearly defines "use in commerce" differently for goods and services.  See George Sink, P.A. Injury Lawyers v. George Sink II Law Firm LLC, 2019 WL 3766478 at *7 (D.S.C. Aug. 9, 2019).

Plaintiffs also offer sufficient evidence to demonstrate that Defendants' mark was used in connection with the advertisement of services.  Specifically, Charles Town Pawn Shop, when named "Hollywood Pawn," was arguably used to promote Lust Gentleman's Club in nearby Martinsburg, WV.  On the record, Plaintiffs provide a picture of a Lust Gentleman's Club shuttle van parked on the premises of Charles Town Pawn Shop when the "Hollywood Pawn" mark was affixed to the building.  See ECF No. 182-17.  This image is corroborated by customer inquires regarding the casino's affiliation with Lust Gentleman's Club.  One casino hotel employee testified that "on average, one or two people a week" asked him about the Lust shuttle van parked at

Charles Town Pawn Shop.  See ECF No. 182-20 at 5.  Likewise, another casino hotel employee testified that customers asked whether the hotel arranged transportation to Lust Gentleman's Club.  See ECF No. 182-16 at 11.  Based on this evidence of customer confusion regarding the casino's affiliation with Lust Gentleman's club, a trier of fact could find that Defendants' "Hollywood Pawn" mark was used to promote Lust Gentleman's Club, thus jeopardizing the casino's business reputation.  Accordingly, the Court finds that Defendants are not entitled to summary judgment on Plaintiffs' trademark infringement claim.

### C.  Damages and Attorneys' Fees

Lastly, Defendants move for summary judgment on damages and attorneys' fees.  To recover damages under the Lanham Act, the plaintiff must prove that there has been a Lanham Act violation, that the plaintiff has been damaged, and that there is a casual connection between the violation and those damages.  Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 286 (4th Cir. 2003).  "In the Fourth Circuit, proof of actual damages is critical to the viability of a Lanham Act claim."  Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc., 2009 WL 2876881, at *2 (E.D. Va. Sept. 2, 2009).  Similarly, under the Lanham Act, courts may award attorneys' fees to the prevailing party in "exceptional circumstances."  Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 441 (4th Cir. 2011).

Because genuine issues of material fact exist regarding the likelihood of confusion and commercial injury, Defendants are not entitled to summary judgment on these issues.  The Court finds that ruling on these issues would be premature.  Therefore, Defendants' request for summary judgment on damages and attorneys' fees

is denied.

## V.      Conclusion

For the aforementioned reasons, the Court **FINDS** that genuine issues of material fact exist on all three counts concerning the Charles Town Pawn Shop. Accordingly, the Court **ORDERS** that Defendants' Motion for Partial Summary Judgment [ECF No. 176] is hereby **DENIED**.  The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** December 16, 2019

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE